**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

MOHAMMAD SAFA AMIRI,

                **Petitioner,**

v.

                                     **Civil No. 2:26cv657**

JEFFREY CRAWFORD, et al.,

                **Respondents.**

## MEMORANDUM ORDER

On June 26, 2026, Mohammad SaFa Amiri ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 alleging that he is being unlawfully detained at the Farmville Detention Center. ECF No. 1. This Court ordered Respondents to submit a response to the Petition and informed Petitioner of his right to file a reply. ECF No. 5. On July 10, 2026, Respondents filed a brief in opposition arguing that the Petition lacked merit but acknowledging the undersigned judge's prior ruling contrary to Respondents' position. ECF No. 6 (citing Gomez Villalobos v. Crawford, No. 2:26cv12, 2026 WL 1165576, at *1 (E.D. Va. Apr. 29, 2026). Petitioner has not yet filed a reply brief, but because his Petition has merit, the Court resolves it without awaiting further briefing. For the reasons articulated below, Petitioner's § 2241 Petition is **GRANTED in part** and Respondents are **ORDERED** to provide Petitioner with a standard § 1226(a) bond hearing before an Immigration Judge.

### A. Background

As summarized by Respondents, Petitioner entered the United States on a flight from Germany in August 2021 and was paroled into the United States pursuant to Operation Allies Refuge ("OAR"), a program benefitting evacuees from Afghanistan.  ECF No. 6, at 3. Petitioner's OAR parole expired in August 2023, but he remained in the United States.  Id.  In 2024 and 2025, Petitioner was charged and convicted of several crimes in Virginia state court: DWI, Reckless Driving, Failure to Stop After Accident, Driving Without a License, Failure to Appear, and a probation violation).  Id. at 3-4.  In early 2026, more than two and a half years after his OAR parole expired, a federal immigration detainer was placed on Petitioner and he was taken into ICE custody.  Id. at 4.

The record before the Court therefore shows that, between August 2023 when Petitioner's parole expired, and early 2026 when Petitioner was detained, the only interaction Petitioner had with federal immigration officials was in March 2025, when his application for asylum and withholding of removal was denied.  ECF No. 6-1 ¶¶ 6-15.  Even after such denial, it does not appear that federal immigration officials took steps during 2025 to remove or detain Petitioner.

In March 2026, Petitioner was issued a federal immigration Notice to Appear ("NTA").  ECF No. 6-4.  The 2026 NTA indicates that Petitioner is an "arriving alien" even though he was no longer

2

on parole and had entered the United States nearly five years prior.[1] Id. The "continuation page" of Petitioner's NTA indicates that he is removable under both § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") for being "present in the United States without being admitted or paroled" and § 212(a)(7)(A)(i) for not possessing valid immigration documentation "at the time of [his] application for admission." ECF No. 6-4, at 4.

## B. Discussion

### 1. Interplay between § 1225 and § 1226

The Supreme Court has "long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." Landon v. Plasencia, 459 U.S. 21, 32 (1982). "But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

---

[1] The NTA further states that Petitioner entered the United States at "a time and place other than designated by the Attorney General," ECF No. 6-4, at 1, even though (1) he arrived at Dulles International Airport on a flight from Germany that appears to have been part of the OAR program administered by the United States; and (2) Respondents affirmatively represent that Petitioner "arrived at a port-of-entry [in 2021] and applied for admission to the United States," ECF No. 6, at 3, 7.

In Romero v. Crawford, No. 3:25cv788, 2026 WL 94634 (E.D. Va. Jan. 13, 2026), and Ponce Vidal v. Crawford, No. 2:26cv134, 2026 WL 561188 (E.D. Va. Feb. 27, 2026), as well as in countless similar cases decided over the last several months, multiple judges of this Court have grappled with the interplay between 8 U.S.C. § 1225(b) and § 1226(a), two statutes governing immigration detention procedures. Historically, § 1225(b) and its mandatory detention provisions applied to noncitizens stopped at or near the border who had yet to establish a "presence" in the United States. In contrast, § 1226(a) and its discretionary bond rules applied to noncitizens who had established a presence in the United States, even if unlawfully.[2]   However, in 2025, the government, first through an internal memo and later through a decision by the Board of Immigration Appeals ("BIA"), Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), announced a new interpretation of § 1225(b). Based on this new interpretation, "nearly all noncitizens who entered the United States without inspection" and who are later found anywhere in the United States are subject to mandatory detention without a bond hearing under § 1225(b) regardless of how long they have been physically present. Ortega Miranda v. Bondi,

---

[2] Once arrested on a warrant issued by the Attorney General, a § 1226(a) detainee "may continue to [be] detain[ed]," may be released on a money bond, or may be released on "conditional parole," the equivalent of release on your own recognizance. 8 U.S.C. § 1226(a)(1), (2). Release under § 1226(a), including "conditional parole," is distinct from humanitarian parole under 8 U.S.C. § 1182(d)(5)(A).

4

No. 3:25cv769, 2026 WL 287179, at *3 (E.D. Va. Feb. 3, 2026) (citation omitted).

The undersigned has repeatedly adopted the emerging majority view that noncitizens demonstrating a long-term presence in the United States are entitled to a discretionary bond hearing under § 1226(a).[3]   See, e.g., Ponce Vidal, 2026 WL 561188, at *2-3 (ordering a § 1226(a) bond hearing and noting that the petitioner, who "resided in the United States for at least a decade" before he was detained by ICE, "unquestionably ha[d] due process rights"); Romero, 2026 WL 94634, at *5-6 (explaining that the government's interpretation of § 1225 "would raise constitutional problems which the Supreme Court is yet to address"); Aroca v. Mason, No. 2:26cv57, 2026 WL 357872, at *19 (S.D.W. Va. Feb. 9, 2026) (finding that the petitioner's interpretation of § 1225 and § 1226 "align[ed] with longstanding constitutional principles" recognizing that "[n]oncitizens physically present in the United States, whether lawfully or unlawfully, are entitled to greater due process protections than those stopped at the border").   In reaching this conclusion, the undersigned has relied on the Supreme Court's longstanding guidance that the "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time

---

[3] Federal judges do not unanimously agree on the issue, as evidenced by a circuit split. Compare Buenrostro-Mendez v. Bondi, 166 F.4th 494, 502 (5th Cir. 2026), and Avila v. Bondi, 170 F.4th 1128, 1138 (8th Cir. 2026), with Barbosa da Cunha v. Freden, 175 F.4th 61, 96 (2d Cir. 2026), Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, 175 F.4th 1258, 1285 (11th Cir. 2026), and Lopez-Campos v. Raycraft, 175 F.4th 713, 732 (6th Cir. 2026).

and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (citation omitted).

### 2. Impact of Petitioner's Parole

Unlike in Romero, Ponce Vidal, and similar cases, here, Petitioner's physical presence in the United States was not first discovered years after his entry. Rather, Petitioner arrived in the United States at Dulles Airport and immediately qualified for humanitarian parole for a two-year period under the OAR program.

Though temporary physical presence in the United States is tolerated when humanitarian parole is granted, it comes with a key "reservation of rights by the Government": The Government is authorized to continue to treat the non-citizen on parole "'as if stopped at the border.'" Martinez v. Hyde, 792 F. Supp. 3d 211, 215-16 (D. Mass. 2025) (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020)); see 8 U.S.C. § 1182(d)(5)(A) (explaining that humanitarian parole "shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States"). Consequently, "even those paroled elsewhere in the country for years pending removal are [fictively] treated for due process

purposes as if stopped at the border" when the government later considers their "rights regarding admission." Thuraissigiam, 591 U.S. at 139 (cleaned up). According to the Respondents' theory as presented in this case, because Petitioner was previously paroled into the United States, he forever remains subject to § 1225(b)(2)'s mandatory detention provisions following the termination of his parole. ECF No. 6, at 6-7.

Consistent with this Court's findings in Gomez Villalobos, 2026 WL 1165576, at *3-4, Petitioner's current detention arguably has earmarks of both § 1225(b), because Petitioner was paroled into the United States at the time of his initial entry, and § 1226(a), because Petitioner was "discovered" unlawfully residing in the United States years after his temporary parole expired. Neither party points to controlling precedent addressing this hybrid factual scenario.

The Court notes its familiarity with, and consideration of, the BIA's ruling in Matter of Q. Li, 29 I&N Dec. 66 (BIA 2025). But Q. Li is factually distinguishable.[4] In Q. Li a noncitizen was placed on humanitarian parole after an encounter near the southern border in 2022. Id. at 67. As "a condition of the parole grant, the [noncitizen] was required to regularly report to a DHS field

---

[4] Q. Li is also not binding on this Court. See Hasan v. Crawford, 800 F. Supp. 3d 641, 657 n.11 (E.D. Va. 2025) ("[T]his Court owes little deference to the BIA's interpretation of the INA." (citing Loper Bright Enters. v. Raimondo, 603 U.S. 369, 412 (2024))); Velazquez v. Raycraft, No. 25cv13675, 2026 WL 447417, at *5 (E.D. Mich. Feb. 17, 2026) (explaining that the court is not "bound by the BIA's recent decision in Matter of Q. Li").

office." Id. "When the [noncitizen] reported to a DHS field office for a scheduled appointment" in November of 2024, she was taken "into custody and issued . . . a notice to appear for removal proceedings and a notice of custody determination." Id. The BIA concluded that when the noncitizen's parole was terminated, she "returned to [mandatory] custody under section 235(b) pending the completion of removal proceedings." Id. at 69-70 (citing 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e)(2)(i)). Importantly, the BIA further concluded that the noncitizen's grant of parole "was automatically terminated when she was served with a notice to appear," a finding that the noncitizen's underlying parole had not terminated prior to her re-detention in 2024. Id. at 70.

In contrast, here, under the facts as presented by Respondents, Petitioner's parole ended more than two and a half years before he was detained in March of 2026. Respondents do not point to any steps the government took during this multi-year period to enforce the end of Petitioner's parole, to take Petitioner into custody, or to initiate removal proceedings. Nor is there any record evidence that the government sought to renew or extend Petitioner's parole. Therefore, unlike in Q. Li, the record before the court demonstrates that Petitioner had no legal status for over two and a half years, during which he established a long-term, albeit unlawful, presence in the United States. As explained in further detail below, these events cannot be

8

reasonably construed as a valid continuation of the "legal fiction" that Petitioner remained stopped at the border.

First, although controlling precedent clearly establishes that the legal fiction of non-presence as applicable to admission rights can continue for several years, Thuraissigiam, 591 U.S. at 139, some district courts have concluded that Thuraissigiam does not directly address whether this fiction extends to the right to be free from detention without even the minimal process of a detention hearing. See Torres v. Hermosillo, No. 2:25cv2687, 2026 WL 145715, at *4 (W.D. Wash. Jan. 20, 2026) (explaining that the "entry fiction" applied by the Supreme Court in Thuraissigiam applied only to noncitizens' rights regarding admission and that "the Supreme Court has never applied the entry fiction doctrine . . . to constitutionally justify the detention of a person living freely, for years, within the United States" (citations omitted)). To the extent that Thuraissigiam does not extend to detention procedures, this Court finds that Petitioner's multi-year presence in the United States entitles him to the same constitutional rights as other noncitizens first discovered years after their entry. See Rincon v. Hyde, 810 F. Supp. 3d 101, 113 (D. Mass. 2025) (ordering a bond hearing after observing that "to apply the entry fiction doctrine to [a petitioner that was on humanitarian parole for more than three years] is to set aside the plain meaning of the Fifth Amendment altogether"); Strunin v. Garcia, 827 F. Supp.

9

3d 976, 988 (S.D. Tex. 2026) ("Pretending that Petitioner never entered the United States [during the years he was a parolee] not only subordinates fact to fiction, it disregards the plain meaning of the Due Process Clause, which promises its protection to every 'person' within the United States." (quoting <u>Torres</u>, 2026 WL 145715, at *4)); <u>Singh v. Bondi</u>, No. SA-26-CA-0541-XR, 2026 WL 752457, at *8 (W.D. Tex. Mar. 16, 2026) ("Noncitizens who have lived with relative freedom in the United States for extended periods — unlike those detained in immigration processing centers at the border — cannot reasonably be deemed never to have been 'here.'"); <u>see also</u> <u>Zadvydas</u>, 533 U.S. at 693 (discussing the due process protections that emerge "once an alien enters the country," even if their presence is both unlawful and temporary).

Second, even accepting that the "legal fiction" of non-presence recognized in <u>Thuraissigiam</u> extends to <u>detention</u> procedures as applied in <u>Q. Li</u>, this Court finds that such fiction ends when a petitioner has enjoyed years of presence <u>after</u> the expiration of his parole period. As recently explained by another district judge addressing similar circumstances:

> Petitioner is not subject to the entry fiction despite his previous parole into the United States. As this Court has repeatedly stated, Petitioner's parole expired and he continued to remain in the United States for over a year before he was detained. As a result, Petitioner had a similar status to any other undocumented immigrant who entered the United States without inspection and without DHS having any clue as to their whereabouts.

10

Rodriguez v. Fields, No. CV 26-117, 2026 WL 1078101, at *11 (E.D. Ky. Apr. 21, 2026); see Martinez v. Lyons, No. 3:25cv1021, 2026 WL 1257330, at *1 (E.D. Va. May 7, 2026) (ordering "a standard § 1226(c) bond hearing" in a case where the petitioner "was not detained in connection with the expiration and termination of his parole, but rather was simply detained after ICE agents randomly 'encountered' him" almost two years after his humanitarian parole expired).

Importantly, here, Petitioner's OAR parole period was followed by more than two and a half years of unauthorized but actual presence. Given Petitioner's multi-year (albeit unapproved) presence within the United States, he must therefore be afforded some basic procedural due process, Zadvydas, 533 U.S. at 693, which includes a full and fair hearing under § 1226(a) to determine the propriety of his continued detention.[5]   See Rodriguez-Acurio v. Almodovar, 811 F. Supp. 3d 274, 307 (E.D.N.Y. 2025) ("[I]t would be illogical to find that [the petitioner] is still in the process of 'arriving' in the United States when she has been continuously residing in the United States for more than three years after the expiration of her humanitarian parole.");

---

[5] This ruling does not suggest that Petitioner has improved his long-term prospects of remaining in the United States by overstaying his parole; he may instead have harmed them.  However, as part of the promise and protections afforded by the United States Constitution, procedural due process rights apply to "all 'persons' within the United States, including [noncitizens]" unlawfully present. Zadvydas, 533 U.S. at 693.

11

see also <u>Wu v. Stamper</u>, No. 1:26cv90, 2026 WL 608286, at *4 (D. Me. Mar. 4, 2026) ("While the expiration of humanitarian parole returns a noncitizen to the 'custody from which he was paroled,' it does not function as a temporal loophole that requires summary <u>physical</u> custody years after the fact." (quoting 8 U.S.C. § 1182(d)(5)(A))).

## C. Conclusion

For the reasons outlined above, Petitioner's § 2241 Petition is **GRANTED in part**. ECF No. 1. Respondents are **ORDERED** to provide Petitioner with **a standard § 1226(a) bond hearing** before an Immigration Judge **on or after July 30, 2026, but not later than August 6, 2026**.[6] In line with due process requirements, Petitioner is entitled to <u>sufficient notice of the date of the bond hearing</u>,[7] an opportunity to be heard in a meaningful manner at such hearing, and a ruling premised on his own case-specific circumstances. <u>Cf. Mendez Trigueros v. Guadian</u>, No. 1:26cv205, slip op. at 7 (E.D. Va. Feb. 18, 2026) (ordering that the petitioner be released unless he received a <u>second</u> § 1226(a) bond hearing that was "constitutionally compliant").

---

[6] The evaluation of Petitioner's prior criminal record in considering any request for discretionary bond is a matter for the Immigration Judge, not the undersigned.

[7] The hearing timeframe is intended to ensure that Petitioner receives this Order, and the notice of his hearing date, once it is set, sufficiently in advance of his hearing to allow him to prepare and present evidence to the immigration judge.

12

Respondents are **ORDERED** to file a status report with this Court within **three (3) days** of the bond hearing, stating whether Petitioner has been granted bond, and, if his request for bond was denied, the case-specific reasons given by the Immigration Judge for that denial.

The Clerk is **DIRECTED** to enter partial judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Memorandum Order to Petitioner and to counsel for Respondents, and administratively close this action.[8]

**IT IS SO ORDERED.**

/s/

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July 17, 2026

---

[8] Although the case will be administratively closed, the Court retains jurisdiction to ensure compliance with this Order.

13